Ela v. Shepard.

## Ela *v.* Shepard & *als.*

The existence of defective counts in a writ does not invalidate an attachment made upon it. If it be properly issued, in due form of law, and not an absolute nullity, it is a sufficient justification for the officer in holding the property until it is quashed.

The return of an officer that he has attached all the "*stock of every kind*" in a woolen factory particularly described, specifying the stock as a "lot of dye wood and dye stuff"—"lot of clean wool" — "sixteen pieces of black, Oxford mixed cassimere"— "twenty-five pieces doeskins and tweeds" — "fifty-one pieces of unfinished cloth" — "lot of cotton wool" — "lot of colored wool" — "cotton wool, oils," &c., "in said woolen factory" — is sufficient.

---

Ela *v.* Shepard.

---

The omission of one of several attaching creditors to sign an agreement, entered into by the debtors and the rest of the attaching creditors, authorizing the officer to complete the manufacture of unfinished goods, and then to sell the same, and other property attached, and apply the proceeds to the payment of the debts of such creditors, will not invalidate the attachment, or render the agreement, or the proceedings under it, void.

Property remaining in the possession or under the control of the officer under such an agreement, is not liable to be reättached by other creditors of the debtors, although the same may have been removed from the place of attachment and manufactured for the purpose of being sent out of the State for sale.

Whether, after property has passed into the hands of the officer, as the agent of the debtors and of creditors having debts to more than its value, under such an agreement, made without fraud, before other creditors have interfered, the debtors retain any attachable interest therein — *quære?*

TRESPASS, to recover twenty-five hundred yards of cloth and six boxes, taken and carried away the 14th of November, 1851, as the property of James Briggs & Brothers, by virtue of writs of attachment against said firm, tried at the February term, 1854, for this county.

The plaintiff proved that on the 18th day of October, 1851, eleven writs of attachment against said firm were placed in his hands as deputy sheriff. The first writ was in favor of Johnson, Sewall & Company, and contained two counts: the first upon an account annexed, under date of October 18, 1851, "For balance of account, $20.000," and the second a general count for $20.000, for divers goods sold and delivered, for money had and received, for interest on divers sums due and owing, and for money paid, &c.

The plaintiff's return upon said writ states an attachment on the 18th day of October, 1851, of the real estate occupied by Briggs & Brothers for a manufacturing establishment, with the building thereon, in Holderness village, and the "fixtures and stock of every kind therein;" also, a "lot of dye wood and dye stuff;" a "lot of clean wool;" "sixteen pieces of black Oxford mixed cassimere;" "twenty-five pieces doeskins and tweeds;" "fifty-one pieces of unfinished cloth;" "lot of cotton wool;" "lot of colored wool, cotton wool, oils, &c., in said woolen factory." The return upon the second writ is of the attachment of "a lot

of dye wood and dye stuff, forty-one pieces of cassimere and doeskin cloth, fifty-one pieces unfinished cloth, lot of wool, lot of cotton, subject to a former attachment in favor of Johnson, Sewall & Co." The returns upon the other writs are similar to that on the second writ, and may be referred to by either party.

The plaintiff also introduced a written agreement, of which the following is a copy :

" GRAFTON SS. We, James Briggs & Brothers, of Holderness, in said county, of the one part, and we, the undersigned, attaching creditors in actions against said James Briggs & Brothers, agree that Joseph Ela, deputy sheriff, may employ help and run the factory of said James Briggs & Brothers so far as it may be necessary to work the stock in and about said factory, and now more or less in the process of manufacturing, and when finished, after paying the help and expenses of so finishing up said stock and preparing it for sale, the said Ela shall keep and apply on the executions of said creditors, in the order of their attachment.

" October 20, 1851."

This agreement was signed by Briggs & Brothers, and by all the attaching creditors except Daniel Shaw, whose suit was pending at the time of the defendants' attachment, but has since been settled. The keys of the factory were given to Ela, and he took possession. The workmen who had been employed by Briggs & Brothers continued in the factory, and the members of said firm also continued to work, but they were all paid by said Ela, and said Ela either personally, or by one Gilman whom he employed, was present and had the oversight and direction of the business until the most of the stock was worked up and finished, as contemplated by said agreement. Briggs & Brothers had been accustomed to consign their cloth, when manufactured, to Johnson, Sewall & Co. for sale, and there was evidence tending to show that it was agreed between said Ela and the agent of said company, with the assent of Briggs & Brothers, that Ela should also send them the cloth, to be sold by them, and account to him for the proceeds. And on the 14th of No-

vember said Gilman, by the direction of Ela, and with the assent of Briggs & Brothers, sent six boxes of cloth to the depot at Holderness village, directed to Johnson, Sewall & Company, Boston, and also sent them a letter, which may be referred to in the argument, as also the letter in answer to this, dated November 17, 1851. The individual who carried the boxes delivered them to the depot-master, and informed him that they were sent by direction of Mr. Ela. This was done about four o'clock in the afternoon, and the goods were attached while at the depot, about 11 o'clock that night, by the defendants. A portion of the cloth was manufactured before the first attachment, and a portion of it afterwards, out of stock then on hand. The boxes were purchased and paid for by the plaintiff. The boxes of goods were packed and directed in the same manner as those which had been consigned to Johnson, Sewall & Co. by Briggs & Brothers, and the boxes were marked with numbers, which were in continuation of the numbers put upon the boxes previously sent by Briggs & Brothers, and the pieces of cloth in them were also numbered in continuation of the pieces before manufactured.

A witness, in answer to a question by the defendants' counsel, stated that the remainder of the cloth manufactured under the direction of said Ela, and a quantity of the wool that had been attached (being all of it not manufactured,) were consigned to the same company for sale after the said 14th of November. The plaintiff's counsel inquired if the wool had not been receipted for, and it was objected that the writing must be produced. The court suggested that until the grounds of the defence were stated it could not appear that any part of the answer was material.

The defendant's counsel objected to a recovery, because —

1. The counts in the writ in favor of Johnson, Sewall & Co. are too general.

2. The return of the officer is insufficient.

3. The agreement was not signed by Daniel Shaw.

4. The plaintiff, by sending the cloth to the depot, to be transported out of the jurisdiction of this State and sold, then abandoned whatever rights he might otherwise have had.

Ela *v.* Shepard.

The plaintiff proposed to prove that Briggs & Brothers have been defaulted in the action in favor of Johnson, Sewall & Co., and that the debt due to this firm is much greater than the value of all the goods attached.

A verdict was taken, by consent, for the sum claimed in the writ, which is to be reduced to such sum as shall be found by an auditor, upon principles which may be settled by the court, or the verdict to be set aside and a new trial granted.

*James Bell*, for the defendants, in support of the first exception, referred to *Fairfield* v. *Baldwin*, 12 Pick. 388, and *Clark* v. *Foxcraft*, 7 Greenleaf 348.

To the point that the officer's return was insufficient, he cited *Hathaway* v. *Larabee*, 14 Shepley 449; *Bruce* v. *Pettingill*, 12 N. H. 341.

To support the position that the attachment was abandoned, he referred to *Moulton* v. *Chadbourne*, 31 Maine 152; *Shepard* v. *Butterfield*, 4 Cush. 425; *Bagley* v. *White*, 4 Pick. 395; *Carrington* v. *Smith*, 8 ditto 419; *Taunton* v. *Williams*, 7 Conn. 271; *Rogers* v. *Vail*, 16 Vt. 327; *Pillsbury* v. *Small*, 1 Appleton 435; *Grover* v. *Stevens*, 1 ditto 93; *Burroughs* v. *Wright*, 91 Vt. 510; *Weston* v. *Dorr*, 12 Shepl. 25; *Kent* v. *Roberts*, 2 Story 591; *Kingsbury* v. *Baker*, 17 Pick. 431.

*H. A. Bellows* and *Quincy*, for the plaintiff, to the sufficiency of the declaration, cited *Tarbox* v. *Dickinson*, 3 Cush. 345; *Smith* v. *Brown*, 14 N. H. 67; 2 Chitty's Plead. 78; Oliver's Prec. 127; 1 Foster 462.

To show the sufficiency of the officer's return, they referred to *Howard* v. *Daniels*, 2 N. H. 137; *Reed* v. *Howard*, 2 Met. 36; *Taylor* v. *Mixter*, 11 Pick. 341; *Whittaker* v. *Sumner*, 9 Pick. 308; *Baxter* v. *Rice*, 21 Pick. 197; *Haven* v. *Snow*, 14 Pick. 28; *Johnson* v. *Day*, 17 Pick. 106; 27 Me. 452, (14 Shepley 452.)

That the non-assent of Shaw did not invalidate the proceedings, reference was made to *Rich & al.* v. *Bell*, 16 Mass. 294.

Ela *v.* Shepard.

That the attachment was not dissolved or abandoned by the agreement, and proceedings under it, they cited *Collins* v. *Brigham & Tr.*, 11 N. H. 420; 2 N. H. 6; 14 Mass. 269; 24 Vt. 24; 2 Vt. 524; 24 Vt. 228; *Crosby* v. *Allyn*, 5 Greenl. 453; *Roberts* v. *Bourne*, 23 Me. 165; *Lambert* v. *Pike*, 33 Me. 141.

FOWLER, J. The first objection raised by the defendants relates to the counts in the writ in favor of Johnson, Sewall & Co. It is a sufficient answer to this, that if they are defective it is not a matter in which these defendants are interested, or which could justify them in taking the property. An officer is not responsible for the accuracy of the attorney who draws the writ. If it be properly issued, and in due form of law, and not an absolute nullity, it is a sufficient justification for him in holding the property until it is quashed. The officer having taken the property and still retaining it in his possession, it was wholly immaterial to these defendants whether one of numerous writs on which it was holden by him contained defective counts or not. The first count might undoubtedly have needed amendments, but the second was in the usual form, and good. Both were good, within the authority of adjudged cases, as preliminary proceedings and capable of amendment. *Tarbell* v. *Dickinson*, 3 Cush. 349; *Smith* v. *Brown*, 14 N. H. 69, and authorities; *McQueston* v. *Young*, 1 Foster 462.

The second objection is to the officer's return, which is alleged to be insufficient. The defendants took the property from the custody of the officer, or his bailee, before the return day of any of the writs, so that any supposed defect in the return could not have been an inducement to their action in the premises. If the return were defective, it might be amended to conform to the fact. The property had not been delivered to a receipter, so that no objection could be taken by him. The defendants are in no situation to object. The plaintiff actually took the property into his own custody and control, and so retained it at the time when it was taken from him by the defendants. It is not, therefore, for them to say it was not under attachment, or to object to

Ela v. Shepard.

the return. See *Baxter* v. *Rice*, 21 Pick. 197, and other authorities cited by the plaintiff.

But we are of opinion the return was sufficient. It was, perhaps, more general than desirable, but it nevertheless clearly covers all the property in controversy. If not, it might have been amended.

We are at a loss to perceive how the failure of Shaw, one of the attaching creditors, to sign the agreement authorizing the plaintiff to manufacture and sell the property attached, could possibly justify these defendants. If Shaw were injured by the disposition of the property without his assent, it is for him to complain and seek redress for his wrongs, and not for these defendants to take and carry the property away, so as to deprive not only Shaw but all the other creditors of all benefit from it. It is not claimed that the proceeds of the sale could by any possibility have reached Shaw. The greatest effect of omitting him from the list of creditors who signed the agreement, would be to give him an action against the plaintiff, and could not invalidate the attachment, or make the agreement, or the proceedings under the agreement, of the debtors and other creditors, illegal or void. They seem to have been entered into and carried on in good faith, for the purpose of disposing of the property to the best advantage, and we see no ground to question their propriety. It does not appear that the defendants were in any way injured or affected by Shaw's not signing the agreement. *Haven* v. *Snow*, 14 Pick. 28 ; *Johnson* v. *Day*, 17 Pick. 106.

The plaintiff, by sending the goods to the depot, did not part with his right to them. They were in his custody and under his control, as much as they had been before, and the attachment was not dissolved or abandoned, so that the defendants could rightfully reättach them. They were still under the absolute dominion of the plaintiff or his agent. *Odiorne* v. *Colley*, 2 N. H. 66.

The fact that the goods were sent to the depot for the purpose of being forwarded to Boston for sale, does not alter the case. They were still in the county, under the plaintiff's control, within

Ela *v*. Shepard.

his jurisdiction, and whatever his purpose may have been as to their subsequent disposition, it could not divest him of his right to hold them there. Even if the goods might have been relieved from attachment, if actually sent out of the county and State, so as to have been liable to reättachment by other creditors of Briggs & Brothers, that question does not now arise.

But we think the agreement of the debtors and of the attaching creditors, having debts to an amount exceeding the value of the goods, under which the goods passed into the plaintiff's possession as agent, to be by him manufactured and sold, made without fraud, and before other creditors interfered, might well be holden to have placed the goods in the plaintiff's hands beyond the reach of attachment, under the circumstances stated; that it was such an appropriation of the goods and the proceeds of their sale, that upon the goods passing into the plaintiff's hands in conformity with it, the debtors ceased to have an attachable interest in them. But it is not necessary to decide this point in the present case.

As none of the objections taken by the defendants are available to defeat the plaintiff's right to recover, he is entitled to the value of the goods at the time they were carried away; and after the verdict shall have been reduced to that sum by the finding of an auditor, if it now exceed it, and the parties are unable to agree to amend it, there must be

*Judgment on the verdict.*